RELIABLE CONSULTANTS, INC.
d/b/a Dreamers, Appellant,

v.

Delia JAQUEZ, Appellee.

No. 03–99–00364–CV.

Court of Appeals of Texas,
Austin.

July 27, 2000.

---

Tim Poteet, Austin, for appellant.

Lloyd Robles, Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MACK KIDD, Justice.

Appellee Delia Jaquez sued appellant, Reliable Consultants, Inc. d/b/a Dreamers ("Dreamers"), for the injuries she sustained in a fall at appellant's store. The jury apportioned responsibility between the parties, finding Jaquez forty percent negligent and Dreamers sixty percent negligent in causing the accident. The trial court rendered judgment on the verdict against Dreamers, awarding Jaquez $123,576.41 in damages. Dreamers appeals in seven points of error. We will affirm.

## BACKGROUND

The material facts of this case are not in dispute. Dreamers is a Texas corporation that sells adult videos and other sexually oriented products at two locations in Austin. In April of 1996, Jaquez visited one of the locations with her husband. The couple entered the store and walked directly

to a wall featuring many popular video rentals. After selecting a video, Jaquez and her husband proceeded to walk to a merchandise display in another part of the store. The area of the store where the display was located was approximately five inches higher in elevation than the rest of the store. At the point where the two sections of the store connected stood a support column. To the right of the column was a six-foot wide ramp that connected the lower level of the store to the upper level. To the left of the support column was a five-inch high step, the perimeter of which was outlined with red tape. Jaquez walked to the right of the column and proceeded up the ramp. She then turned to examine the merchandise on the display to her left. The display, which stood to the left of the ramp, had been placed only one or two feet away from the step. Jaquez and her husband browsed for a short while and then decided to return to the front of the store to rent the video they had chosen. Upon turning to leave, Jaquez failed to notice the step and fell to the floor, twisting and fracturing her ankle in the process.

Jaquez filed suit against Dreamers in April 1998 on a premises liability theory, alleging that the store was negligent in failing to protect Jaquez, a business invitee, from the unreasonable risk of harm presented by the step and display. Jaquez requested actual and consequential damages, including medical expenses, lost wages and earning capacity, and physical and mental pain and anguish. Dreamers responded with a general denial and pleaded an affirmative defense of contributory negligence. At trial, Dreamers argued that there was no unreasonable risk of harm associated with the step because it was in plain view, well lit, and marked with red tape. Dreamers maintained that Ja-

quez's own negligence was the sole proximate cause of the fall.

After both sides rested, the trial court submitted the case to a jury. The jury was asked to determine (1) whether the negligence, if any, of Jaquez and Dreamers caused the fall, (2) the percentage of negligence attributable to each party, and (3) the amount of damages that would reasonably compensate Jaquez for her injuries. After deliberating, the jury returned with its verdict, finding Jaquez forty percent negligent and Dreamers sixty percent negligent for the fall. The jury found $168,958.74 to be a reasonable amount of compensation for Jaquez's injuries. The trial court rendered judgment on the verdict and, after taking into account the percentage of responsibility that the jury attributed to Jaquez's own negligence, ordered Dreamers to pay Jaquez damages in the amount of $123,576.41. Dreamers filed a motion for judgment notwithstanding the verdict and a motion for new trial. The trial court denied both motions. Dreamers now brings this appeal, raising seven points of error.

## DISCUSSION

### Legal and Factual Sufficiency of the Evidence

■■■ The appellant's burden in this appeal is a heavy one. By its first three points of error, Dreamers seeks a reversal of the trial court's judgment on grounds that the evidence is legally and factually insufficient to support the jury's findings that (1) the condition presented an unreasonable risk of harm, (2) Dreamers knew or should have known of that unreasonable risk of harm, and (3) Dreamers' failure to exercise reasonable care by failing to adequately warn Jaquez of the condition or make it safe was a proximate cause of Jaquez's injuries.[1]

1. Both parties agree that Jaquez was a business invitee. As a general rule, an owner or operator breaches the duty it owes to a business invitee if (1) the owner or operator had actual or constructive knowledge of some

condition on the premises, (2) the condition posed an unreasonable risk of harm to the invitee, (3) the owner or operator failed to exercise reasonable care to reduce or eliminate the risk, and (4) the failure to use such

■ When reviewing a no-evidence point, we consider only the evidence and inferences tending to support the jury's fact finding. We disregard all evidence and inferences to the contrary. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Simons v. City of Austin,* 921 S.W.2d 524, 527 (Tex.App.— Austin 1996, writ denied). We will uphold the finding if more than a scintilla of evidence supports it. *See Crye,* 907 S.W.2d at 499; *Simons,* 921 S.W.2d at 527. Evidence amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *See Crye,* 907 S.W.2d at 499; *Simons,* 921 S.W.2d at 527.

■ When reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all of the evidence. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience, clearly shows bias, or if the evidence supporting the finding is so weak as to make the judgment clearly wrong and manifestly unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain,* 709 S.W.2d at 176. We may not substitute our judgment for that of the jury merely because we reach a different conclusion. *See Peco Constr. Co. v. Guajardo,* 919 S.W.2d 736, 739 (Tex.App.—San Antonio 1996, writ denied); *Westech Eng'g, Inc. v. Clearwater Constr., Inc.,* 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ).

■ By its first point of error, appellant complains that the evidence is legally and factually insufficient to support the

jury's finding that the step and adjacent display presented an unreasonable risk of harm. We disagree. "A condition presenting an unreasonable risk of harm is one in which there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck v. Cal Bayreuther & Assoc.,* 451 S.W.2d 752, 754 (Tex.1970). According to the testimony of Justin Bertelson, one of Dreamers' former store managers, the sales counter at one time stood flush with the step. At some point, Dreamers rearranged the store and moved the sales counter to the front, exposing the step in the process. It then placed a display in close proximity to the step and stocked the shelves with merchandise, thereby creating a visual distraction. Although appellant sought to eliminate the hazard by constructing a ramp over a portion of the step, it chose not to extend the ramp over the entire length of the step. Thus, the remaining portion of the step remained unguarded and unmarked, except for a strip of red tape that was placed around the perimeter.

At trial, William Senkowski, the plaintiff's expert witness on loss prevention and occupational health and safety issues, testified how the step and its surrounding conditions presented a hazard. Senkowski explained that customers approaching the step from the elevated level of the store would not see the step unless they were looking directly at the floor. He also discussed the visual distraction created by the videos and merchandise and pointed out that there were no visual cues or warnings at eye level to alert customers that a step was imminent. Senkowski suggested many reasonable precautions that could have been taken to adequately warn cus-

---

care proximately caused the plaintiff's injuries. *See CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983). Generally, this duty may be discharged by adequately warning business invitees of any

unreasonable risks of harm or by making the premises reasonably safe. *See Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1997); *State v. Williams,* 940 S.W.2d 583, 584 (Tex. 1996).

tomers or eliminate the risk, such as (1) placing "lobby ropes" along the step to direct traffic towards the ramp, (2) posting a sign or other visual warning at eye level, (3) dividing the display shelf at the step so as to create a visual cue that would attract customers' attention, or (4) blocking the step with a table or display in a manner similar to the store's previous configuration. Considering this testimony alone, the jury may very well have found that Dreamers' failure to take more precautions was unreasonable.

Next, Justin Bertelson testified that during his employment as the store's manager, he had observed between twelve and fifteen people stumble or react with surprise after failing to see the same step that caused Jaquez to fall. Bertelson also testified that the red tape appellants had placed around the step's perimeter was often scuffed and worn—sometimes almost black—suggesting that persons had stumbled across the step on numerous occasions. The testimony of Sendowsky and Bertelson, coupled with the photographic evidence in the record, constitute more than a scintilla of evidence from which the jury could reasonably infer that the condition presented an unreasonable risk of harm. Consequently, we find the evidence legally sufficient to support the jury's finding. Furthermore, after weighing and considering all of the evidence equally, we are unable to conclude that the jury's finding is so shocking or biased or that the evidence is so weak as to make the jury's verdict clearly wrong and manifestly unjust.

▮▮▮▮▮ Appellant nevertheless cites a line of cases in which courts of this state have reversed premises liability judgments rendered in favor of plaintiffs, holding that, as a matter of law, certain premises conditions present no unreasonable risk of harm.[2] We are not persuaded by these authorities. Although a few of appellant's cases involve accidents or injuries similar to those Jaquez sustained in her fall, all either expressly or implicitly underscore the need to determine each individual case on its own merits. *See, e.g., Seideneck,* 451 S.W.2d at 755 ("the evidence *as it appears in the record of this case* . . . is so weak as to do no more than create a mere surmise") (emphasis added). It is important to note that reasonableness determinations such as the one here are fact-intensive inquiries and, as such, are issues well-suited for a jury's determination. Indeed, as the Texas Supreme Court commented in one of the cases cited by appellant, there is no definitive, objective test that may be applied to determine whether a specific condition presents an unreasonable risk of harm. *See Seideneck,* 451 S.W.2d at 754. While premises liability cases involving similar facts are sometimes probative of whether a type of condition in a particular situation may present an unreasonable risk of harm, they are by no means conclusive on the question. Appellant selects certain discrete facts from the cases it cites; it then focuses on those isolated facts and argues that the case at bar is analogous. However, the facts in this case are unique and demand an individualized determination, one that a jury has already made. Having concluded after reviewing the record that the evidence is legally and factually sufficient to support the jury's finding that the condition pre-

---

2. *See, e.g., H.E. Butt Grocery Co. v. Resendez,* 988 S.W.2d 218 (Tex.1999) (mere existence of store display, without more, is legally insufficient evidence of unreasonable risk of harm); *Seideneck v. Cal Bayreuther Assoc.,* 451 S.W.2d 752 (Tex.1970) (floor rug that caused customer to trip was not unreasonably dangerous as matter of law); *Missouri Pac. R.R. Co. v. Buenrostro,* 853 S.W.2d 66 (Tex.App.—San Antonio 1993, writ denied) (no evidence to establish that railroad ties were unreasonably dangerous condition); *Medallion Stores, Inc. v. Eidt,* 405 S.W.2d 417 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.) (under old "no-duty doctrine," since abolished by the supreme court in *Parker v. Highland Park,* 565 S.W.2d 512 (Tex.1978), standard display platform was not unreasonably dangerous condition where undisputed evidence showed it was plainly visible).

sented an unreasonable risk of harm, we overrule appellant's first point of error.

■ In its second point of error, appellant maintains that even if the condition did present an unreasonable risk of harm, there is legally and factually insufficient evidence to support the jury's finding that Dreamers knew or should have known of any such risk. We disagree. First, we note that this was not a *latent* premises defect that appellant could not have reasonably been expected to discover. Rather, Dreamers was aware of the hazard it created by its own affirmative actions. In the past, the store's sales counter was flush with the step, negating any risk of harm. However, at some point Dreamers voluntarily chose to move the counter and place a display shelf within close proximity of the step, thereby exposing the step and creating an added visual distraction in the process. Recognizing the resulting hazard, Dreamers attempted to *reduce* the risk of injury by constructing a ramp over a portion of the step and outlining with red tape the perimeter of the step that remained exposed. Furthermore, as stated previously, Dreamers was charged with notice of the hazard after Bertelson witnessed between twelve and fifteen customers stumble or react with surprise after failing to see the step.[3] From the precautionary measures appellant affirmatively undertook, coupled with the numerous previous instances where people had stumbled, the jury could reasonably infer that appellant had actual knowledge of the risk presented. Even if it could be considered that appellant had no actual knowledge of the risk, there is more than sufficient evidence in the record to support a jury finding that appellant, at the very least, *should* have known of the risk. We therefore overrule appellant's second point of error.

■ Appellant argues in its third point of error that the evidence is legally and factually insufficient to support the jury's finding that appellant's failure to exercise reasonable care was a proximate cause of Jaquez's injuries. To prevail under a theory of premises liability, a plaintiff must prove that the defendant's negligence was a proximate cause of his injuries. *See CMH Homes, Inc.*, 15 S.W.3d at 99; *Corbin*, 648 S.W.2d at 296. Proximate cause consists of cause in fact and foreseeability. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118–19 (Tex.1996). A defendant's negligence is a cause in fact of the plaintiff's injuries if the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *See Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 477 (Tex. 1995). Foreseeability, the second element of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *See Doe*, 907 S.W.2d at 478; *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). A danger is foreseeable if the injury is of the type that "might reasonably have been anticipated." *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985).

■ The evidence firmly establishes that Dreamers' failure to exercise reasonable care to reduce or eliminate the risk was a cause in fact of Jaquez's injuries. The very nature of the accident and common sense suggest that a sufficient causal nexus exists between Dreamers' decision to expose the step without taking additional safety precautions and Jaquez's injuries. Both Jaquez and Senkowsky testified that if there had been a warning at eye level or some sort of physical barrier, in all probability Jaquez would have noticed the step

---

3. The fact that Bertelson testified that he had not seen anyone actually fall or injure themselves, as appellant is eager to point out, is beside the point. These observations put appellant on notice that the step presented a risk of harm and that an accident was reasonably foreseeable.

or avoided it altogether. Indeed, many of the precautions Senkowsky recommended (precautions that the jury may have found to be reasonable courses of action) would have eliminated the hazard entirely and prevented the accident. Because Jaquez's injuries were a natural and probable result of Dreamers' failure to use reasonable care, we conclude that there was cause in fact. *See Doe,* 907 S.W.2d at 477.

▇▇▇ Likewise, Jaquez's injuries were a foreseeable result of Dreamers' breach of its duty of care. Certainly, it is foreseeable that an inadequately marked or guarded step could cause someone to fall and sustain bodily injuries. As Bertelson testified, at least twelve to fifteen other customers had failed to see the step and stumbled. On this basis alone, the jury could have found that a reasonable person would have anticipated that a customer might trip and fall on the step. We are reminded that our determination of whether an injury is foreseeable is "a practical inquiry 'based on common experience applied to human conduct.'" *Doe,* 907 S.W.2d at 478 (quoting *City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex. 1987)). Common experience suggests that steps, although undoubtedly commonly encountered structures, may present unreasonable risks of harm in certain circumstances. Where, as here, a step is unguarded, insufficiently marked, and obscured by nearby distractions, it is entirely foreseeable that a customer who is unacquainted with the premises might trip and fall as a result. The jury found that Jaquez's injuries were foreseeable, and having reviewed the record we are unable to conclude that the evidence supporting this finding is legally or factually insufficient. We overrule appellant's third point of error.

### Jury Charge

▇▇▇ Next, Dreamers complains by its fourth point of error that the trial court erred in refusing to include in the jury charge a definition of "unreasonable risk of harm." At trial, appellant requested submission of "unreasonable risk of harm" as the term was defined by the Texas Supreme Court in *Seideneck v. Cal Bayreuther & Assoc.,* 451 S.W.2d at 754. "A condition presenting an unreasonable risk of harm is one in which there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Id.* Dreamers contends that the trial court's refusal to submit this definition was harmful error and that without it the jury was permitted to make an affirmative finding without applying the appropriate legal standard. We disagree.

▇▇▇ Rule 277 of the Texas Rules of Civil Procedure requires that a trial court submit those instructions that are proper in enabling the jury to make a just decision. *See* Tex.R. Civ. P. 277. A trial court is only required to submit explanatory instructions and definitions for legal and technical terms. *See Green Tree Acceptance, Inc. v. Combs,* 745 S.W.2d 87, 90 (Tex.App.—San Antonio 1988, writ denied); *Ortiz v. O.J. Beck & Sons, Inc.,* 611 S.W.2d 860, 868 (Tex.Civ.App.—Corpus Christi 1980, no writ). A trial court has broad discretion in submitting the jury charge, *see Texas Dep't of Transp. v. Ramming,* 861 S.W.2d 460, 463 (Tex. App.—Houston [14th Dist.] 1993, writ denied), and an error in the jury charge is reversible only if it probably caused rendition of an improper judgment. *See* Tex. R.App. P. 44.1(a). In deciding whether the trial court has abused its discretion, we may not substitute our judgment for the trial court's. *See Multi–Moto Corp. v. ITT Commercial Fin. Corp.,* 806 S.W.2d 560, 567–68 (Tex.App.—Dallas 1990, writ denied); *Commercial Life Ins. Co.,* 895 S.W.2d at 374. Our inquiry is limited to determining whether the trial court's action was arbitrary or unreasonable. *See Multi–Moto Corp.,* 806 S.W.2d at 567–68.

The jury charge in this case was in strict accordance with the jury questions, instructions, and definitions recommended

by the Texas Pattern Jury Charge (the "pattern charge") in premises liability cases. *See* State Bar of Texas, Texas Pattern Jury Charges—Malpractice, Premises, & Products PJC 66.4 (1998). Neither the instructions nor the comments in the pattern charge include a specific definition of "unreasonable risk of harm." *See id.* PJC 66.4 cmt. Under our broad-form submission rules, the questions submitted, along with the accompanying instructions, contained all the necessary elements for premises liability outlined in *CMH Homes, Inc. v. Daenen*and *Corbin v. Safeway Stores, Inc. See supra* fn. 1. The jurors were instructed that in order to hold Dreamers liable, they first had to find that an unreasonable risk of harm existed. At least two other courts of appeals have been confronted with this same issue, and both have held that a definition of "unreasonable risk of harm" is not necessarily required in premises liability cases. *See Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 592 (Tex.App.—Texarkana 1992, writ denied); *Physicians & Surgeons Gen. Hosp. v. Koblizek,* 752 S.W.2d 657, 660 (Tex.App.—Corpus Christi 1988, writ denied). We concur. We are aware of no authority requiring the submission of more specific instructions regarding a premises owner's duty than those provided in the pattern charge. Absent any such authority, we hold that the trial court's refusal to submit in its charge the requested definition of "unreasonable risk of harm" was not error. Appellant's fourth point of error is overruled.

### Admission of Testimony

In its fifth point of error, Dreamers maintains that the admission of Senkowsky's testimony, over Dreamers' objection, that the condition was a "trip-and-fall hazard" was harmful error because Senkowsky was unqualified to testify about the legal standard of care Dreamers owed Jaquez. Dreamers contends that Senkowski's testimony was irrelevant, unreliable, and reasonably calculated to and probably did result in an improper judgment. We disagree and observe that Dreamers mischaracterizes the nature of Senkowsky's testimony.

We may reverse a trial court's judgment based on an error in the admission or exclusion of a witness's testimony only if we conclude that (1) the trial court did in fact commit error and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989); *McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25, 27 (Tex.App.—San Antonio 1998, pet. denied). In determining error, we review the trial court's admission of evidence for an abuse of discretion. *See McEwen,* 975 S.W.2d at 27; *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). A trial court abuses its discretion only if it acts unreasonably or without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

For an expert's testimony to be competent, it must first be shown that he is trained in the science of which he testifies or has knowledge of the subject matter of the fact issue in question. *See Missouri Pac. R.R. Co. v. Buenrostro,* 853 S.W.2d 66, 77 (Tex.App.—San Antonio 1993, writ denied). The undisputed evidence in the record shows that Senkowski had at least twenty years of professional experience working as a property inspector and loss control consultant, advising businesses about loss control issues and making health and safety recommendations. He was certified by the Texas Department of Insurance as a qualified Texas field safety representative and a member of the American Society of Safety Engineers and the National Safety Council. Senkowsky had successfully passed several examinations necessary for his certifications, all of which demanded extensive knowledge of safety issues, including state and federal safety regulations. On the basis of these qualifications and his per-

sonal knowledge of the facts in this case, Senkowsky testified that the step and the adjacent display were hazardous. He also suggested several safety precautions that could have eliminated or minimized the risk.

Dreamers complains that there was no showing that Senkowsky had sufficient knowledge or experience qualifying him to testify regarding the legal standard of care owed by premises occupiers or what conditions constitute an unreasonable risk of harm. However, Senkowsky made no legal conclusions. He never testified as to whether the condition presented an unreasonable risk of harm. Nor did Senkowsky ever comment on the duty of care Dreamers owed to Jaquez or whether he believed Dreamers had been negligent. Senkowsky merely testified that in his opinion the step and its surroundings presented a "trip-and-fall hazard." Thereafter, it was the *jury's province* to consider that testimony, along with all the other evidence, and to determine for themselves the ultimate issue of whether the step presented an unreasonable risk of harm. Senkowsky's testimony was relevant, and we find it reliable considering his qualifications. In admitting it, the trial court did not act unreasonably or without regard to any guiding rules and principals. Having determined that the trial court did not abuse its discretion, we need not conduct a harm analysis.[4] We overrule appellant's fifth point of error.

### Improper References to Relative Wealth of Parties

By its sixth point of error, Dreamers complains that Jaquez improperly invited the jury to consider the relative wealth of the parties on more than one occasion during trial. Dreamers contends that these references to Dreamers' financial status were efforts to incite bias and prejudice against Dreamers and to evoke sympathy for Jaquez. Dreamers contends that these references were incurably prejudicial. *See National Union Fire Ins. Co. v. Kwiatkowski,* 915 S.W.2d 662, 664 (Tex. App.—Houston [14th Dist.] 1996, no writ) (plaintiff's repeated references to parties' relative financial conditions was harmful error). We disagree.

All the references appellant cites in its brief involve Jaquez's examination of Douglas Richards, Jr., the president of Dreamers. At no point during the questioning did Jaquez's attorney compare, or ask Richards to compare, the net worth or relative financial conditions of the parties. Jaquez's counsel only questioned Richards about the number and kinds of safety precautions that Dreamers could afford to implement, considering the degree of risk presented by the condition. These questions were relevant with regard to the cost-benefit analysis that is necessarily involved in any premises liability action when determining whether a defendant has acted reasonably. All the cases appellant cites in support of its argument involve instances where a plaintiff's attorney was permitted, over the defendant's objection, to incite bias and prejudice against the defendant and evoke sympathy for the plaintiff by eliciting *irrelevant* testimony concerning the parties' relative financial conditions. Here, there is nothing in the record to indicate that Jaquez's counsel suggested, either implicitly or explicitly, that the jury consider the parties' relative financial conditions. Furthermore, the questions and resulting testimony were highly relevant to a material issue of fact—the reasonableness of Dreamers' actions—and they were in no way unduly

---

4. Nevertheless, we observe that even if the admission was error, any such error was harmless because it was not reasonably calculated to and did not result in an improper judgment. *See* Tex.R. Civ. P. 44.1(a)(1). If Senkowsky's testimony had been excluded, the testimony of Jaquez and Bertelson, along with the photographic evidence in the record, would nevertheless constitute some evidence from which the jury could reasonably conclude that the condition presented an unreasonable risk of harm and that appellant's negligence was a proximate cause of Jaquez's injuries.

prejudicial. Having reviewed all of the references appellant cites in the record, we conclude that Jaquez's questions were proper and that the trial court's decision to overrule appellant's objections was not error, much less harmful error. We overrule appellant's sixth point of error.

### Damages

Finally, appellant complains in its seventh point of error that the trial court's judgment was improper because it awarded Jaquez future damages without reducing those damages to present value.[5] Appellant complains that because the jury was not told what discount rate to apply, it was unable to reduce future damages to present value. We disagree.

 First, we observe that appellant never requested an instruction on the applicable discount rate; therefore, any complaint of the trial court's failure to submit the issue or instruction is waived. *See* Tex.R. Civ. P. 278; *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex.1986). We will nevertheless briefly address the merits of appellant's argument, notwithstanding this failure to preserve error.

Texas law does not require specific evidence of the discount rate, although a trial court may determine the discount rate and perform the present value calculations. *See In re Gonzalez*, 993 S.W.2d 147, 160 (Tex.App.—San Antonio 1999). Here the jury was asked, as directly set out in the pattern jury charge, "What sum of money, *if paid now in cash*, would fairly and reasonably compensate [Delia Jaquez] for [her] injuries, if any, that resulted from the occurrence in question?" *See* State Bar of Texas, Texas Pattern Jury Charges—Personal Injury Damages—Basic Question PJC 80.2 (1998) (emphasis added). The jury was instructed not to include interest on any amount of damages that it found and not to in-

clude damages for one element in computing any other element. Thus, the jury was charged with calculating a specific amount that, as of the day of the verdict, would compensate Jaquez for her injuries—both past and future. By its very nature, this question required the jury to take into account the time value of money and discount the future damages to a present-day dollar amount. Although the question is simply stated and makes no reference to an applicable discount rate, it required the jury to make the necessary calculation. It was therefore proper.

The trial court then reduced the damages, taking into account the percentage of negligence attributable to Jaquez, and added to the resulting amount the prescribed statutory rate of prejudgment interest. Although appellant complains that Jaquez should not be allowed to recover prejudgment interest on future damages, it is well established that prejudgment interest is recoverable on future damages. *See Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529 (Tex.1998); *C & H Nationwide v. Thompson*, 903 S.W.2d 315, 324 (Tex.1994); Tex. Fin.Code Ann. § 304.102 (West 1998). We overrule appellant's seventh point of error.

### CONCLUSION

Having overruled all of appellant's points of error, we affirm the trial court's judgment.

---

5. The jury found that, in all reasonable probability, Jaquez would sustain the following damages: (1) future physical pain and mental anguish: $14,000; (2) loss of future earning capacity: $96,720; (3) future physical impairment: $0; (4) future disfigurement: $0. The trial court then took into account Jaquez's comparative negligence and adjusted these figures, along with all the other damages.