Larry D. Lawrence, Sr., Natural Father of Larry D. Lawrence, Jr., Deceased v. City of Wichita Falls

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-392-CV

LARRY D. LAWRENCE, SR., APPELLANT

NATURAL FATHER OF LARRY D.

LAWRENCE, JR., DECEASED 

V.

CITY OF WICHITA FALLS APPELLEE

------------

FROM THE 89
TH
 DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

Appellant, Larry D. Lawrence, Sr. (Larry, Sr.), filed suit against the City of Wichita Falls (the City) for the drowning death of his son Larry D. Lawrence, Jr. (Larry, Jr.).  Larry, Jr. drowned in an irrigation siphon owned in part by the City.  Larry, Sr. sought damages under the Wrongful Death Act
(footnote: 1) for the City’s negligence in designing the siphon and its maintaining the siphon as an attractive nuisance to minors. 
 The City’s motion for summary judgment was granted based on governmental immunity.  This court, applying pre-Tort- Claims-Act common law, reversed and remanded the case for trial, holding that suit against the City is not barred by governmental immunity because water delivery and irrigation are proprietary functions at common law.
(footnote: 2)  
After a jury trial on the merits, the jury found that the City did not negligently cause Larry, Jr.’s death, even though it found that the injury was foreseeable by the City.  Consequently, the jury awarded no damages to Larry, Sr. 
 Larry, Sr. appeals the judgment. 
 Because we hold that the trial court did not abuse its discretion in limiting testimony and the judgment was not against the great weight and preponderance of the evidence, we affirm the trial court’s judgment. 

I.  Factual Summary

This case is a wrongful death action regarding the drowning death of a three-year-old boy, Larry Lawrence, Jr.  The death at issue in this case occurred when Larry, Jr. fell in or in some way entered an unused lake and irrigation canal siphon that contained stagnant water.  The siphon, built in 1924 with no subsequent modifications, is owned jointly by the City of Wichita Falls and Wichita County Water District Number Two.  The siphon does not have any surrounding fences, covers, ladders, or any other safety devices to prevent entry into the siphon or to use to get out of the siphon.

At the time of Larry, Jr.’s death, Larry, Sr. was in jail and had not seen his children for two or three weeks.  On the day of Larry, Jr.’s disappearance, his mother, Cindy, left him outside at her friend’s house unsupervised.  Thirty minutes later, Cindy went outside to leave, but Larry, Jr. was nowhere to be found.  Cindy left without him.

An hour and a half after Cindy left her friend’s home, she called the police to report Larry, Jr. missing.  Cindy told police that her son had a tendency to play around water and that they should look for him at the nearby apartment pool, the lake, or the drainage ditch.

Evidence of Cindy’s inadequate supervision was presented to the jury through the testimony of Patsy Baggett, a former Child Protective Service (now the Texas Department of Protective and Regulatory Services (TDPRS)) supervisor.  Evidence of Cindy’s knowledge that the boy frequently wandered off to play around water was presented to the jury through the testimony of multiple police officers who investigated Larry, Jr.’s disappearance.

Expert testimony regarding the design and safety of the siphon was presented by both parties.  Larry, Sr.’s expert testified that he was familiar with industrial siphons, but was not familiar with the type of siphon at issue in this case.  The City’s expert, a civil engineer who had been involved in designing and maintaining residential siphons, testified about the City’s inability to cover the siphon, to put a ladder in the siphon, or to fence the siphon because of maintenance issues.

The jury charge included definitions for Cindy’s ordinary care, her negligence, and her conduct as a proximate cause.  The jury determined that Larry, Jr. was a trespasser and that the City’s gross negligence, if any, was not a proximate cause of his death, even though the injury was foreseeable.  Question number four, which addresses the City’s gross negligence as a proximate cause provides “[t]here may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the ‘sole proximate cause’ of an occurrence, then no act or omission of any other person could have been a proximate cause.”  The jury awarded no damages.  

II. Legal Analysis
 

Larry, Sr. raises two points in this appeal:  (1) the trial court abused its discretion by limiting his cross-examination of one of the City’s expert witnesses; and (2) the jury verdict was against the great weight and preponderance of the evidence.  The City also raises the cross-point that the trial court did not have subject matter jurisdiction.

A.  Subject Matter Jurisdiction

Despite the City’s failure to file a notice of appeal, which would normally prevent review by this court,
(footnote: 3) the City complains that the law has changed and it can now argue an exception based on a new case,
(footnote: 4) and therefore, it has governmental immunity.  Thus, the trial court did not have subject matter jurisdiction in this case.  Subject matter jurisdiction cannot be waived and may be raised by the court on its own motion or for the first time on appeal.
(footnote: 5)  
We therefore address this point.

Municipalities, as agents of state government, are immune from suit and liability unless the state consents.
(footnote: 6)  Governmental immunity from suit defeats a court’s subject matter jurisdiction.
(footnote: 7)  Subject matter jurisdiction is an essential requirement to the authority of a court to decide a case.
(footnote: 8) 
 
But generally, once subject matter jurisdiction is properly acquired by a court, no later fact or event can defeat jurisdiction.
(footnote: 9)  “Further, the law of the case doctrine mandates that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings of the same case.”
(footnote: 10)  
The doctrine applies in all subsequent proceedings if the facts in the later proceedings are substantially the same or are so nearly the same that they do not materially affect the legal issues involved in the later proceeding.
(footnote: 11)
 In our prior opinion, we specifically held that 
suit against the City is not barred by governmental immunity because water delivery and irrigation are proprietary functions at common law.
(footnote: 12)  No facts have changed since that decision.
(footnote: 13)  Additionally, the law in effect at all relevant times—when Larry, Jr. drowned, when the petition was filed, and when we handed down our original opinion—supports our original holding that the City is not immune from this suit.
(footnote: 14)  Consequently, we now hold that the law of the case applies and overrule the City’s cross point.

B.  Cross-Examination

Larry, Sr. complains that the trial court abused its discretion by limiting his cross-examination of one of the City’s expert witnesses.  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.
(footnote: 15)  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
(footnote: 16)
 An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.
(footnote: 17)  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.
(footnote: 18)
 At trial, the City called Patsy Baggett to testify about TDPRS documents and cases that had been opened investigating Cindy’s supervision of her children.  In the course of Appellant’s cross-examination, Baggett testified that she thought that if a child was properly supervised at all times “it’s real difficult for them to get away from you very far.”  Baggett was further asked if she thought that a person would be negligent if he maintained a dangerous condition on his land when he knew children had a tendency to play around his land.  In response, Baggett said that when a child is three years old, it is the responsibility of the parents to be aware of the dangerous conditions around the children and keep their children away from the dangers, regardless of what the dangerous conditions are and where they can be found.

Later in Baggett’s testimony, Larry, Sr.’s counsel tried to clarify the testimony above:

Q So if Cindy Lawrence was guilty of any negligence, that negligence was not the sole proximate cause–

[DEFENSE COUNSEL]: Objection.

Q [PLAINTIFF’S COUNSEL]--of this boy’s death–

[DEFENSE COUNSEL]: That calls for a legal conclusion.

THE COURT:   Sustained.

Q [BY PLAINTIFF’S COUNSEL]   Let me change the wording of that question.

Then the negligence of Cindy Lawrence was not the only cause of his death; was it?

[DEFENSE COUNSEL]: That’s going to be the same objection.  It calls for a legal conclusion.

THE COURT:   Sustained.

[PLAINTIFF’S COUNSEL]:   I have no other questions in that event.

Finally, on redirect, when asked “Had Larry Lawrence been properly supervised that day he would never be able--he would have never been able to be around the siphon to fall in and drown,” Baggett answered “[T]hat would be my conclusion.”

Now, Larry, Sr. complains on appeal that because the City called Patsy Baggett to testify and proved her up as an expert witness regarding dangerous conditions for a child and inadequate supervision of a child, it was an abuse of discretion for his cross-examination of this witness to be limited to lay witness testimony.  Although we agree that Patsy Baggett testified as an expert witness, Larry, Sr. is mistaken about why her testimony was limited.  

Baggett’s testimony was not limited because she was a lay witness.  The objection made and properly sustained by the trial court was that Larry, Sr.’s question called for a legal conclusion.  Expert testimony is only admissible if it will assist the trier of fact in understanding the evidence or in determining fact issues.
(footnote: 19)  “[A]n expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts.”
(footnote: 20)  Therefore, an expert’s opinion on an ultimate issue is admissible only if a predicate is laid to show that the expert knows the proper legal definition in the question.
(footnote: 21)  However, if “the jury is equally competent to form an opinion regarding an ultimate fact issue, an expert’s testimony as to those issues may be excluded.”
(footnote: 22)
 Because no predicate was laid proving that Baggett knew the proper definition of sole proximate cause, the jury was equally competent to form its own opinion regarding sole proximate cause.  Furthermore, Larry, Sr. makes no argument nor does he cite us any authority that would allow Baggett to testify to a legal conclusion.
(footnote: 23)  We hold that the trial court did not abuse its discretion by sustaining the City’s proper objection.
(footnote: 24)  Consequently, we overrule Appellant’s first point. 

C. Factual Sufficiency

Larry, Sr. argues in his second point that the verdict of no negligence by the City was against the great weight and preponderance of the evidence and that a finding of no damage is “contrary to all human experience.”  We disagree. 

In reviewing a point asserting that an answer is “against the great weight and preponderance” of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence.
(footnote: 25)  So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it.
(footnote: 26) 

1. Sole Proximate Cause

To avoid negligence liability in this case, the City sought to prove and the jury implicitly found that Cindy was the sole proximate cause of Larry, Jr.’s death.  Sole proximate cause is an inferential rebuttal issue available when the “evidence shows that a third person’s conduct, not the conduct of any of the parties to the lawsuit,” is the only proximate cause of the damage.
(footnote: 27)  Thus, a sole proximate cause challenge is a challenge to the causation element of the plaintiff’s negligence claim or to the existence of a prima facie case.
(footnote: 28)  Proximate cause is a question of fact for the jury to decide.
(footnote: 29)
 Proximate cause consists of two elements, cause in fact and foreseeability.
(footnote: 30)  Cause in fact is an act or omission without which the injury would not have occurred.
(footnote: 31)  An act is foreseeable if a person of average intelligence should have anticipated that a danger to others would be created by the act or omission; however the person does not have to anticipate the specific injury that occurred.
(footnote: 32)
 In this case, although the actual cause of Larry, Jr.’s death was drowning, there was evidence from which the jury could have reasonably determined that Cindy’s inadequate supervision of Larry, Jr. was the sole proximate cause of his death.  First, the record is filled with testimony that had Cindy been watching Larry, Jr. while he played outside, he would have never made it to the siphon.  In fact, Cindy testified that she would have never allowed Larry, Jr. to play in or around the drainage ditch or the siphon.

Second, Cindy herself, as well as the ten other witnesses who were asked a question regarding the issue, stated that a mother (or father) could anticipate that a three-and-a-half-year-old child unsupervised for thirty minutes, as Larry, Jr. was, could get into a number of dangerous situations that could cause death.  Cindy could have further anticipated Larry, Jr. getting into a dangerous situation if she did not adequately supervise him because he had run off on prior occasions, and he had a tendency to wander toward water.  On one prior occasion, Cindy was contacted after Larry, Jr. had ridden off on his bike after dark, only to be found by police two miles away.

Thus, based on the record in this case, we cannot say that the jury’s finding that the City’s gross negligence, if any, was not a proximate cause of Larry, Jr.’s death and its implicit finding that Cindy, a third party, was the sole proximate cause of Larry, Jr.’s death were so against the great weight and preponderance of the evidence as to be manifestly unjust.
(footnote: 33) 

Larry, Sr. also complains in his second point that the no-damage award was “contrary to all human experience.”  Because we overrule Appellant’s factual sufficiency point, we do not reach this issue.
(footnote: 34)  We overrule Appellant’s second point.

III. 
Conclusion

Having overruled both of Appellant’s points and the City’s cross-point, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  November 6, 2003

FOOTNOTES
1:
Tex. Civ. Prac. & Rem. Code Ann. 
§ 71.002 (Vernon 1997).

2:
Lawrence v. City of Wichita Falls
, 906 S.W.2d 113, 117 (Tex. App.—Fort Worth 1995, pet. denied). 

3:
See
 
Tex. R. App. P.
 25.1(c).

4:
See City of Tyler v. Likes
, 962 S.W.2d 489, 500–02 (Tex. 1997).

5:
See
 
Waco I.S.D.
 
v. Gibson
, 22 S.W.3d 849, 851 (Tex. 2000).

6:
Lawrence
, 906 S.W.2d at 115; 
see also Dallas Area Rapid Transit v. Whitley
, 104 S.W.3d 540, 542 (Tex. 2003).

7:
Lawrence
, 906 S.W.2d at 115; 
Dallas Area Rapid Transit
,
 104 S.W.3d at 542.

8:
Waco I.S.D.
, 22 S.W.3d at 851; 
City of Longview v. Head
, 33 S.W.3d 47, 51 (Tex. App.—Tyler 2000, no pet.).

9:
City of Longview
, 33 S.W.3d at 51; 
see also
 
Dallas I.S.D. v. Porter
, 709 S.W.2d 642, 643 (Tex. 1986).

10:
City of Longview
, 33 S.W.3d at 51; 
City of Dallas v. Cornerstone Bank
,
 N.A.
, 879 S.W.2d 264, 268 (Tex. App.—Dallas 1994, no writ).

11:
Id
.

12:
Lawrence
, 906 S.W.2d at 117.

13:
Id
. at 117–18. 

14:
See Tarrant County Water Control & Improvement Dist. v. Crossland
, 781 S.W.2d 427, 433 (Tex. App.—Fort Worth 1989, writ denied); 
City of Tyler v. Fowler Furniture Co.
, 831 S.W.2d 399, 402–03 (Tex. App.—Tyler 1992, writ denied).

15:
See Carpenter v. Cimarron Hydrocarbons Corp.
, 98 S.W.3d 682, 687 (Tex. 2002); 
Downer v. Aquamarine Operators
,
 Inc.
, 701 S.W.2d 238, 241–42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

16:
Downer
, 701 S.W.2d at 242.

17:
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978);
 see also Goode v. Shoukfeh,
 943 S.W.2d 441, 446 (Tex. 1997).

18:
Butnaru v. Ford Motor Co.
,
 
84 S.W.3d 198, 211 (Tex. 2002); 
Holley v. Holley
, 864 S.W.2d 703, 706 (Tex. App.—Houston [1
st
 Dist.] 1993, writ denied).

19:
GTE Southwest
,
 Inc. v. Bruce
, 956 S.W.2d 636, 640 (Tex. App.—Texarkana 1997), 
aff’d
, 998 S.W.2d 605 (Tex. 1999); 
Story Servs.
,
 Inc. v. Ramirez
, 863 S.W.2d 491, 499 (Tex. App.—El Paso 1993, writ denied).

20:
Isern v. Watson
, 942 S.W.2d 186, 193 (Tex. App.—Beaumont 1997, pet. denied); 
see also
 
Louder v. DeLeon
, 754 S.W.2d 148, 149 (Tex. 1988).

21:
Isern
, 942 S.W.2d at 193.

22:
GTE Southwest
, 956 S.W.2d at 640; 
see also Story Servs.
, 863 S.W.2d at 499.

23:
See
 
Tex. R. Evid.
 702.

24:
See City of Brownsville v. Alvarado
, 897 S.W.2d 750, 753 (Tex. 1995).

25:
Ames v. Ames
, 776 S.W.2d 154, 158-59 (Tex. 1989), 
cert. denied
, 494 U.S. 1080 (1990); 
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex. 1986).

26:
Watson v. Prewitt
, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (writ ref’d n.r.e.); 
In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

27:
Montes v. Pendergrass
, 61 S.W.3d 505, 508 (Tex. App.—San Antonio 2001, no pet.); 
First Assembly of God
,
 Inc. v. Tex. Util. Elec. Co.
, 52 S.W.3d 482, 493 (Tex. App.—Dallas 2001, no pet.).

28:
Montes
, 61 S.W.3d at 508.

29:
Id
.

30:
First Assembly of God
, 52 S.W.3d at 493; 
City of Gladewater v. Pike
, 727 S.W.2d 514, 517 (Tex. 1987).

31:
First Assembly of God
, 52 S.W.3d at 493; 
City of Gladewater
, 727 S.W.2d at 517.

32:
First Assembly of God
, 52 S.W.3d at 493; 
City of Gladewater
, 727 S.W.2d at 517.

33:
See Watson
, 159 Tex. 305, 320 S.W.2d at 816;
 King's Estate
, 150 Tex. 662, 244 S.W.2d at 661.

34:
See
 
Tex. R. App. P.
 47.1.