Arthur Lee Moritz v. General Electric Company, CB Richard Ellis, Inc., Tarrant County Limited Partnership, and Regal Business Center, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-038-CV

ARTHUR LEE MORITZ APPELLANT

V.

GENERAL ELECTRIC COMPANY, CB APPELLEES

RICHARD ELLIS, INC., TARRANT 

COUNTY LIMITED PARTNERSHIP,

AND REGAL BUSINESS CENTER, INC.

------------

FROM THE 48
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Arthur Lee Moritz (Moritz) filed this suit against General Electric Company (GE), CB Richard Ellis, Inc. (Ellis), Tarrant County Limited Partnership (TCLP), and Regal Business Center, Inc. (Regal) (collectively Appellees) for injuries he suffered when he fell from an elevated loading ramp.  TCLP, Ellis, and Regal filed a joint motion for summary judgment on all of Moritz’s claims against them, which the trial court granted.  GE then filed its own motion for summary judgment, which the trial court also granted.  In two issues, Moritz now appeals.  Because we hold that the trial court erred by concluding that no genuine issues of material fact exist regarding whether Moritz’s claim against TCLP, Ellis, and GE could only be a negligent activity claim, TCLP and Ellis retained control of the ramp, and GE’s acts or omissions were a proximate cause of the accident, and because the trial court erred in determining as a matter of law that Moritz was required to show that the danger was not open and obvious in order to proceed with his premises defect claim, we reverse and remand the trial court’s judgment.

I.  Background Facts

Moritz was a delivery driver for Jiffy Sam’s Trucking Co. “dedicated” to GE.  Everyday Moritz would go to the warehouse owned by TCLP, managed by Ellis, and leased by GE.  GE leased only one of many warehouses in the complex owned by TCLP.  When Moritz arrived at the warehouse each day, GE would give Moritz his sales tickets, and Moritz and/or GE would load his truck with electrical supplies to be delivered to GE’s customers.

The warehouse had two loading dock doors.  A ramp accompanied one of the loading dock doors, allowing truck access into the warehouse.  The elevation of the ramp at door level was approximately four and a half feet. Although some of the other ramps at the warehouses in the complex had railings along their sides, the GE warehouse ramp did not have any rails.  GE’s and Moritz’s preferred loading and securing area was inside the warehouse.  If that location was not available, they preferred that he back his truck up to the door without the ramp.  On some occasions, neither of these options was available.

On the day of the incident, because GE had merchandise stacked in the preferred loading areas, Moritz’s truck was loaded and secured on the ramp. While Moritz was adding his final tie-down over the supplies in his truck, the bungee cord he was using broke, causing Moritz to fall backwards from the truck and off the ramp, breaking his pelvis, hip, and thumb.

Moritz filed this suit against Appellees complaining, among other things, that if the loading ramp had been equipped with handrails, his serious injuries would have been prevented.  TCLP, Ellis, and Regal filed a motion for summary judgment, alleging that Moritz’s claim could only be one for a negligent activity and not a premises defect, that they owed no duty to Moritz under a negligent activity claim, that Regal was not a proper party to this suit, that TCLP and Ellis did not control the ramp under a premises defect claim, and, alternatively, if they did, they nevertheless did not owe Moritz a duty because the danger was open and obvious.  At the hearing on the motion for summary judgment, Moritz nonsuited Regal.  The trial court granted summary judgment in a general order. 

GE then filed a motion for summary judgment, alleging that Moritz’s claim was a negligent activity claim and not a premises defect claim, that GE had no duty to Moritz under a negligent activity claim, that GE had no duty under a premises defect claim because the danger was open and obvious, and that GE did not proximately cause Moritz’s injuries because the accident was not foreseeable.  The trial court also granted GE’s motion for summary judgment in a general order.  Moritz, in two general issues, now challenges the trial court’s summary judgment.

II.  Pleading Multiple Causes of Action Against Multiple Defendants

In this case, Moritz specifically argues that the trial court erred by concluding as a matter of law that the occurrence arose from a negligent activity and not a premises defect.  We agree.  In both motions for summary judgment, Appellees argued that this is a negligent activity and not a premises defect case and that Moritz should be limited to proving only a negligent activity claim.  After all the evidence has been presented at trial, a premises liability claim may turn out to be a premises defect case or a negligent activity case.
(footnote: 2)  But a plaintiff is not required to restrict his pleadings or presentation of evidence at trial to only a premises defect claim or a negligent activity claim.
(footnote: 3)  Furthermore, in a multidefendant lawsuit, a plaintiff may often be able to offer, and is not restricted from offering, all the evidence required to prove liability under many different causes of action for each different defendant.
(footnote: 4)  As set forth below, issues of material fact exist regarding TCLP’s, Ellis’s, and GE’s liability under a premises defect theory and GE’s liability under a negligent activity theory.  Thus, the proportionate liability of TCLP, Ellis, and GE for premises liability is an issue for the jury after Moritz has put on all his evidence at trial.
(footnote: 5)

III.  Premises Liability

In Moritz’s two issues, he argues that the trial court erred by granting summary judgment because genuine issues of material fact exist regarding his premises liability claims.  Liability for injury on business premises may be found under a premises defect theory or a negligent activity theory.
(footnote: 6)  There are two categories of premises defects for which an employee or an independent contractor may hold an owner or general contractor liable:  (1) defects that exist on the premises when the independent contractor or its employee enters; and (2) a defect the independent contractor or its injured employee created by the work activity.
(footnote: 7)  A negligent activity is one that involves an injury by or as a contemporaneous result of the activity conducted on the premises rather than by a condition of the premises.
(footnote: 8)
 Appellees assert that this is a negligent activity case because Moritz would have never been injured if he had not leaned out over the edge of the ramp while he was securing his load.  This argument fails because Moritz’s first amended petition alleges adequate facts for both a premises defect cause of action and a negligent activity cause of action against GE and a premises defect cause of action against TCLP and Ellis.  Therefore, the trial court erred to the extent that it held Moritz’s claim could only be a negligent activity claim.

A.  Premises Defect
 
Cause of Action

Moritz argues that the trial court erred by concluding as a matter of law that the occurrence arose from a negligent activity and not a premises defect.  We agree.

A premises defect claim requires an invitee to prove that:  (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the danger; (3) the owner failed to exercise ordinary care to protect the invitee from the danger, by both failing to adequately warn the invitee of the condition and failing to make that condition reasonably safe; and (4) the owner’s failure was a proximate cause of injury to the invitee.
(footnote: 9)
1.  Right to Control/Duty

In this case, Moritz specifically complains that the trial court erred by concluding as a matter of law that under the lease between TCLP and GE, TCLP did not retain control of the loading ramp as required to prove the duty owed under premises defect cause of action.  We agree.

To prove the existence of a duty under the first category of premises defect, a defect that exists on the premises when the invitee enters, in the landlord-tenant context, the invitee must establish that the landlord retained a right to control the injury-causing portion of the premises.
(footnote: 10)  To prove the existence of a duty under the second category of premises defect, a defect the independent contractor or its injured employee created by the work activity, the injured party must establish the defendant’s right to control the defect-producing work.
(footnote: 11)  Therefore, the right to control establishes the existence of a duty and provides the legal basis upon which liability can be found.
(footnote: 12)
 The lease between TCLP and GE defines the leased “premises” as the outer walls of the warehouse inward.  Furthermore, the lease provides the following:

9. Repairs and Maintenance:

(a) By Landlord:  Landlord shall at its expense maintain only the roof, foundation, underground or otherwise concealed plumbing, and the structural soundness of the exterior walls (excluding all windows, window glass, plate glass, and all doors) of the Building in good repair and condition, except for reasonable wear and tear.  Landlord shall not be responsible for termite eradication.  Tenant shall give immediate written notice to Landlord of the need for repairs or corrections and Landlord shall proceed promptly to make such repairs or corrections.  Landlord’s liability hereunder shall be limited to the cost of such repairs or corrections.

Landlord represents that at the beginning date of this Lease the plumbing and any fire protection sprinkler system, heating system, air-conditioning equipment, and elevators are in good operating condition.  In addition, 
Landlord shall maintain the paving outside the Building
, the landscaping and regular mowing of grass and any railroad siding.

. . . .

11. Common Areas:  The use and occupation by Tenant of the leased premises shall include the use in common with others entitled thereto of the common areas, parking areas, service roads, 
loading facilities
, sidewalks, and other facilities as may be designated from time to time by Landlord, subject, however, to the terms and conditions of this agreement and to reasonable rules and regulations for the use thereof as prescribed from time to time by Landlord.

All common areas described above 
shall at all times be subject to the exclusive control and management of Landlord
, and Landlord shall have the right from time to time to establish, modify, and enforce reasonable rules and regulations with respect to all facilities and areas mentioned in this Article.  Landlord shall have the right to construct, maintain, and operate lighting facilities on all said areas and improvements; to police the same; from time to time to change the area, level, location and arrangement of parking areas and other facilities hereinabove referred to; and to restrict parking by tenants, their officers, agents and employees to employee parking areas.  (emphasis added)

The lease unambiguously states that the Landlord will maintain the paving outside the building and that loading facilities are common areas for which the Landlord has exclusive control.  Therefore, applying the appropriate standard of review,
(footnote: 13) because the record reflects that the ramp existed at the time GE leased the warehouse, and that the ramp is a paved ramp outside the building, we hold that issues of material fact exist regarding whether TCLP retained a right to control and maintain the ramp, and thus owed a duty to Moritz to use reasonable care to keep the premises in a reasonably safe condition.
(footnote: 14)
 Furthermore, issues of material fact exist regarding whether the ramp is a loading facility.  TCLP alleges that the ramp is not a loading facility, and that the ramp is only a means of ingress and egress into the warehouse.  Deposition testimony from GE employees and Moritz state that delivery trucks were often loaded on the ramp.  Consequently, the trial court erred to the extent that it held as a matter of law that TCLP did not have the right to control the ramp.

2.  “No-Duty”/ Open and Obvious

Additionally, Moritz specifically complains that the trial court erred by concluding as a matter of law that the absence of rails on the loading ramp was an “open and obvious” defect alleviating any duty owed by TCLP, Ellis, or GE to Moritz.  We agree.

Relying on dicta in 
Coastal Marine Serv. of Texas
,
 Inc. v. Lawrence
,
(footnote: 15)  Appellees argued in their motions for summary judgment that Moritz had to prove that the dangerous condition was not open and obvious; however, that element has been abolished in premises defect claims.
(footnote: 16)  Whether the condition is open and obvious goes to the reasonableness of Moritz’s conduct under the circumstances, which is an issue to be considered by the jury in determining the proportionate responsibility of the parties.
(footnote: 17)  Consequently, applying the proper standard of review,
(footnote: 18) we hold that the trial court erred to the extent that it held as a matter of law that Moritz had to show that the danger was not open and obvious to prove TCLP, Ellis, or GE owed a duty to him.

B.  Negligent Activity Cause of Action

Moritz also argues that the trial court erred by finding that no genuine issues of material fact exist regarding whether GE proximately caused Moritz’s injuries.  We agree.  In Moritz’s first amended petition, he alleges that GE is liable for his injuries because GE had a duty to exercise reasonable care in safely supervising his activities.  A negligent activity claim requires that the plaintiff prove that the defendant owed plaintiff a legal duty, the duty was breached, and damage was proximately caused by the breach.
(footnote: 19)
1.  Right to Control

Although the general rule is that a general contractor does not owe a duty to ensure that an independent contractor performs its work in a safe manner, a duty does arise if the general contractor had a right to control the activity.
(footnote: 20)  Therefore, the right to control the activity establishes the existence of a duty and provides the legal basis on which liability can be found.
(footnote: 21)
 Right to control in this context means that “‘[t]here must be such a retention of a right of supervision that the [independent] contractor is not entirely free to do the work in his own way.’”
(footnote: 22)  Right to control can be retained in two ways:  by contract or by actual exercise of control.
(footnote: 23)  Because the parties agree that no contract exists between Moritz and GE, we review the evidence to determine whether an issue of material fact exists regarding whether GE actually exercised control over Moritz’s activities on the premises. 

The record reflects that GE frequently regulated and directed where Moritz parked and loaded his truck.  Additionally, GE frequently loaded or assisted Moritz in loading his truck.  Furthermore, the record reflects that Moritz was only in charge of actually backing the truck up to be loaded and picking up sales tickets; GE had a right to tell him how, when, and where the loading activities took place.  GE also had a right to tell Moritz when and where to deliver the merchandise.

Although GE alleges that in determining whether issues of material fact exist regarding its right to control Moritz’s activities we should limit our consideration to its specific right to control how Moritz 
secured
 his load on the day of the incident, the proper review is whether issues of material fact exist regarding whether GE retained the right to control any aspect of Mortiz’s activities.
(footnote: 24)  Therefore, applying the proper standard of review,
(footnote: 25) we hold that issues of material fact exist regarding whether GE retained control of Moritz’s activities.

2. Proximate Cause

Moritz also specifically argues that the trial court erred by finding that no genuine issues of material fact exist regarding whether GE could foresee injury arising from the activity.  We agree.

Proximate cause consists of two elements, cause in fact and foreseeability.
(footnote: 26)  Cause in fact is an act or omission that is a substantial factor in bringing about the injury, without which the injury would not have occurred.
(footnote: 27)  An act is foreseeable if a person of average intelligence should have anticipated that a danger to others would be created by the act or omission; however the person does not have to anticipate the specific injury that occurred.
(footnote: 28)
 In this case, GE specifically stated that it was not foreseeable that Moritz’s bungee cord would break, “propelling him off of the ramp.”  The test, however, is not whether GE could foresee the specific manner in which the injury would occur.  GE only had to anticipate the danger of someone falling off the ramp when loading a truck or securing a load on the ramp with no rails.  The summary judgment evidence shows that GE preferred for Moritz to load his truck on a level surface.  The evidence also shows that GE was aware that the ramp did not have side rails that would prevent a person from falling off the side of the ramp.  Consequently, applying the proper standard of review,
(footnote: 29) because a person of average intelligence would have anticipated that a danger to others would be created by loading and/or securing a truck on a four-and-a-half-foot ramp with no rails, we hold that issues of material fact exist regarding whether GE proximately caused Moritz’s injuries.

IV.  Conclusion

Because we hold that the trial court erred by granting TCLP and Ellis’s motion for summary judgment and GE’s motion for summary judgment, we  sustain both of Moritz’s issues on appeal.  We reverse the trial court’s judgment and remand this case for trial.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  May 20, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Wal-Mart Stores
,
 Inc. v. Garza
, 27 S.W.3d 64, 67 (Tex. App.—San Antonio 2000, pet. denied).

3:
See 
Tex. R. Civ. P.
 48
;
 Saenz v. David & David Constr. Co.
,
 Inc.
, 52 S.W.3d 807, 810 (Tex. App.—San Antonio 2001, pet. denied)
.

4:
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 33.001–33.016 (Vernon 1997); 
Tex. R. Civ. P.
 277.

5:
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 33.001–33.016; 
Tex. R. Civ. P.
 277; 
see also Parker
 
v.
 
Highland Park
,
 Inc
., 565 S.W.2d 512, 517 (Tex. 1978)
; 
Bill’s Dollar Store
,
 Inc. v. Bean
, 77 S.W.3d 367, 370 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); 
Thompson v. City of Corsicana Hous. Auth.
, 57 S.W.3d 547, 555 (Tex. App.—Waco 2001, no pet.).

6:
See
,
 e.g.
, 
Dow Chem. Co. v. Bright
, 89 S.W.3d 602, 606 (Tex. 2002); 
Clayton W. Williams
,
 Jr.
,
 Inc. v. Olivo
, 952 S.W.2d 523, 527–28 (Tex. 1997); 
Garza
, 27 S.W.3d at 67.

7:
See
,
 e.g.
, 
Dow Chem. Co.
, 89 S.W.3d at 606; 
Olivo
, 952 S.W.2d at 527.

8:
See
,
 e.g.
,
 Keetch
 
v. Kroger Co.
, 845 S.W.2d 262, 264 (Tex. 1992)
; 
Saenz
, 52 S.W.3d at 812.

9:
State v. Williams
, 940 S.W.2d 583, 584–85 (Tex. 1996); 
Keetch
, 845 S.W.2d at 264.

10:
See Wal-Mart Stores
,
 Inc. v. Alexander
, 868 S.W.2d 322, 324 (Tex. 1993); 
Parker
, 565 S.W.2d at 515.

11:
See
,
 e.g.
, 
Olivo
, 952 S.W.2d at 528–29; 
Saenz
, 52 S.W.3d at 813.

12:
Olivo
, 952 S.W.2d at 528; 
Saenz
, 52 S.W.3d at 813.

13:
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant
, 73 S.W.3d 211, 215 (Tex. 2002); 
Trico Techs. Corp. v. Montiel
, 949 S.W.2d 308, 310 (Tex. 1997)
; Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995)
; City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

14:
See Alexander
, 868 S.W.2d at 324.

15:
988 S.W.2d 223, 225 (Tex. 1999).

16:
Parker
, 565 S.W.2d at 517.

17:
Id
.; 
Bill’s Dollar Store
, 77 S.W.3d at 370.

18:
Tex. R. Civ. P.
 166a(c);
 Grant
, 73 S.W.3d at 215; 
Montiel
, 949 S.W.2d at 310
; Harwell
, 896 S.W.2d at 173
; City of Houston
, 589 S.W.2d at 678.

19:
Lee Lewis Constr.
,
 Inc. v. Harrison
, 70 S.W.3d 778, 782 (Tex. 2001).

20:
Id
.

21:
Olivo
, 952 S.W.2d at 528; 
Saenz
, 52 S.W.3d at 813.

22:
Koch Refining Co. v. Chapa
, 11 S.W.3d 153, 155 (Tex. 1999) (quoting 
Restatement (Second) of Torts 
§ 414 (1965))
; Lee Lewis Constr.
, 70 S.W.3d at 783
.

23:
Lee Lewis Constr.
, 70 S.W.3d at 783.

24:
Id
.

25:
Tex. R. Civ. P.
 166a(c);
 Grant
, 73 S.W.3d at 215; 
Montiel
, 949 S.W.2d at 310;
 Harwell
, 896 S.W.2d at 173;
 City of Houston
, 589 S.W.2d at 678.

26:
Lawrence v. City of Wichita Falls
, 122 S.W.3d 322, 329 (Tex. App.—Fort Worth 2003, pet. denied); 
Reliable Consultants,
 Inc. v. Jaquez
, 25 S.W.3d 336, 343 (Tex. App.—Austin 2000, pet denied).

27:
Lawrence
, 122 S.W.3d at 329; 
Reliable Consultants
, 25 S.W.3d at 343.

28:
Lawrence
, 122 S.W.3d at 329; 
Reliable Consultants
, 25 S.W.3d at 343.

29:
Tex. R. Civ. P.
 166a(c);
 Grant
,
 
73 S.W.3d at 215; 
Montiel
, 949 S.W.2d at 310
; Harwell
, 896 S.W.2d at 173
; City of Houston
, 589 S.W.2d at 678.