IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0148
════════════
 
Regal Finance Company, Ltd. 
and Regal Finance Company II, Ltd., Petitioners,
 
v.
 
Tex Star Motors, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourteenth District of Texas
════════════════════════════════════════════════════
 
 
Argued September 9, 2009
 
            
Justice 
Johnson, dissenting.
 
            
The Court concludes there is some evidence to support the jury’s findings 
of damages based on Regal’s disposal of repossessed 
vehicles in a commercially reasonable manner, even though there is no evidence 
the dispositions conformed to standards in the one jury instruction setting out 
how sales could be commercially reasonable. The Court’s holding effectively 
approves the jury’s having decided on its own what the 
standards are for commercially reasonable dispositions of repossessed 
automobiles. It then remands the case for the court of appeals to measure the 
factual sufficiency of the evidence against that unknown standard.
            
The Court’s analysis is flawed in two major ways. First, the Court does 
not adhere to the rule that sufficiency of the evidence must be measured against 
definitions as they are given in the jury charge, even if the definitions are 
incomplete or incorrect. Second, lay jurors are not presumed to know the meaning 
of legal terms such as “commercially reasonable.” So even assuming it would have 
been proper for the jury to determine whether Regal’s 
sales of vehicles were commercially reasonable using a standard other than the 
definition given in the charge, the only way the jury would have known another 
standard would have been through evidence such as properly qualified expert 
testimony regarding the other standard. There was no such evidence. Accordingly, 
I disagree with the Court’s conclusion that there is legally sufficient evidence Regal’s 
sales were commercially reasonable and thus disagree with its holding that there 
is legally sufficient evidence of Regal’s damages to 
the extent those damages were based on commercially reasonable sales.
I. The Jury 
Charge Defined “Commercially Reasonable”
            
The jury charge contained standard instructions, including the 
instruction that “[w]hen words are used in this charge in a sense that varies 
from the meaning commonly understood, you are given a proper legal definition, 
which you are bound to accept in place of any other meaning.” See Tex. R. Civ. P. 226a. A trial court 
must submit “such instructions and definitions as shall be proper to enable the 
jury to render a verdict.” Tex. R. Civ. 
P. 277. Jury charges are directed to lay jurors untrained in the law, 
thus charge language is evaluated from the perspective of such a juror. See Columbia Rio Grande Healthcare, L.P. v. Hawley, 284 
S.W.3d 851, 862 (Tex. 2009); Galveston, H. & S.A. Ry. Co. v. 
Washington, 63 S.W. 534, 538 (Tex. 1901).
            
Neither of the parties nor the Court maintains that laypersons have a 
common understanding of the legal term “commercially reasonable” as it is used 
in the Uniform Commercial Code (UCC). Thus, the term is one that should have 
been defined in the charge. See Tex. & P. Ry. Co. v. Mercer, 90 
S.W.2d 557, 560 (Tex. 1936) (explaining that “proximate cause” is a legal phrase 
requiring definition); Magnolia Petroleum Co. v. Long, 86 S.W.2d 450, 455 
(Tex. 1935); Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d 336, 344 (Tex. App.—Austin 2000, pet. 
denied); Mayes v. Stewart, 11 S.W.3d 440, 455 (Tex. App.—Houston [1st 
Dist.] 2000, pet. denied) (“While the trial court must explain legal or 
technical terms, its discretion in determining the sufficiency of such 
explanations is broad.”); Johnson v. Whitehurst, 652 S.W.2d 441, 447 
(Tex. App.—Houston [1st Dist.] 1983, writ ref’d n.r.e.) (“The only requirement to be observed is that the 
trial court must give definitions of legal and other technical 
terms.”).
            
The issue arises from Question 6 of the charge which submitted Regal’s alleged damages. The question began by asking what 
sum of money, if any, would fairly and reasonably compensate Regal for its 
damages. The question had four parts with separate elements of damages submitted 
in each part. Parts (a) and (b) and their accompanying instructions are the 
parts relevant to the Court’s decision. In those parts, the jury was instructed 
to find Regal’s damages measured by
a. The difference, if any, between the unpaid balance on 
all Loans that Tex Star has not guaranteed and the amount received by [Regal] 
upon the sale of the vehicles that served as collateral for such 
Loans.
 
In answering this question, consider only Loans relating 
to vehicles that [Regal] sold in good faith and in a commercially reasonable 
manner. Good faith means honesty in fact and the observance of 
reasonable commercial standards of fair dealing.
 
Every aspect of the disposition, including the method, 
manner, time, place and other terms must be commercially reasonable. A sale 
is commercially reasonable if it conforms to reasonable commercial practices 
among dealers in the type of property that was the subject of the 
sale.
 
The fact that a greater amount could have been obtained 
by a collection, enforcement, disposition, or acceptance at a different time or 
in a different method from that selected by [Regal] is not of itself sufficient 
to preclude [Regal] from establishing that the collection, enforcement, 
disposition, or acceptance was made in a commercially reasonable 
manner.
 
            
. . . .
 
b. The difference, if any, between the unpaid balance on 
all Loans that Tex Star has not guaranteed and the amount received by [Regal] 
upon the sale of the vehicles that served as collateral for such Loans. For 
purposes of this question, consider only Loans relating to vehicles that [Regal] 
sold in good faith and in a commercially reasonable manner as those terms are 
defined in the preceding paragraphs, and after giving reasonable notice to 
Tex Star.
 
(emphasis 
added).
            
In regard to the second paragraph of instructions to (a) the Court says 
“read in context, the first sentence [“Every aspect of the disposition, 
including the method, manner, time, place and other terms must be commercially 
reasonable”] conveys the general rule, the second sentence [“A sale is 
commercially reasonable if it conforms to reasonable commercial practices among 
dealers in the type of property that was the subject of the sale”] offers an 
alternative method to prove commercial reasonableness, and the following 
paragraph [“The fact that a greater amount could have been obtained by a 
collection, enforcement, disposition, or acceptance at a different time or in a 
different method”] allows that other commercially reasonable methods may be 
used.” ___ S.W.3d ___. But under this record, the 
second sentence does not merely set out an alternative method by which 
the jury could determine whether the sales were commercially reasonable, as the 
Court says it does; it gives the only method in the charge for evaluating 
whether Regal’s sales were commercially reasonable and 
therefore defined the term. Thus, for purposes of this case, the second sentence 
told the jury what the term “commercially reasonable” means, and it can hardly 
be disputed that lay persons understand that what a word or term means is a 
definition of the term. See also Black’s Law Dictionary 455 (8th ed. 
2004) (“define” means to state or explain explicitly, to fix or establish, to 
set forth the meaning of a word or phrase; “definition” means the meaning of a 
word as explicitly stated in a drafted document); Merriam-Webster’s Collegiate Dictionary 
327 (11th ed. 2003) (“definition” is a statement expressing the essential nature 
of something or a statement of the meaning of a word or word group or a sign or 
symbol). As a definition of the term, the second sentence set forth the only 
standard in the charge by which the jury could evaluate whether Regal’s sales were commercially reasonable and still follow 
the charge, regardless of whether the definition was a complete statement of the 
law. Therefore, the sufficiency of the evidence of a commercially reasonable 
sale must be measured against the definition in the charge. Romero v. KPH 
Consol., Inc., 166 S.W.3d 212, 221 (Tex. 2005) (“The sufficiency of the 
evidence must be measured by the jury charge when, as here, there has been no 
objection to it.”); City of Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000) (“Since neither 
party objected to this instruction, we are bound to review the evidence in light 
of this definition.”); Osterberg v. 
Peca, 12 S.W.3d 31, 55 (Tex. 2000) (“[I]t is the court’s charge, not some 
other unidentified law, that measures the sufficiency of the evidence when the 
opposing party fails to object to the charge.”).
            
The text of Question 6 supports the conclusion that it defines the term 
“commercially reasonable” as used in the charge. Although the term could have 
been defined in different ways pursuant to the UCC and cases cited by the Court, 
it was not;[1] it was defined in one way. The trial 
court did not include words qualifying the definition as one of several 
alternative ways Regal could have proven its sales were commercially reasonable. 
See Tex. Bus. & Comm. 
Code § 9.627(b)(3). Further, the structure of 
the sentence militates in favor of using the definition as a complete 
definition, and against the jury’s considering the definition as one of several 
alternatives. The foregoing is also consistent with the specific language in (b) 
that refers to definitions of “good faith” and “commercially reasonable” in (a). 
The instruction in (b) inquired about damages Regal incurred due to unpaid 
balances on “Loans relating to vehicles that [Regal] sold in good faith and in a 
commercially reasonable manner, as those terms are defined in the 
preceding paragraphs.” (emphasis added).
            
And, contrary to the Court’s statement, the third paragraph of (a) does 
not imply to the jury that there are other methods of determining whether 
dispositions of collateral are commercially reasonable or offer any guidance for 
what would comprise a commercially reasonable sale. It neither adds to nor 
detracts from the definition of “commercially reasonable” in the preceding 
paragraph. Rather, the third paragraph merely emphasizes that the process of a 
disposition is what must be commercially reasonable, and that the end result—the 
price received for the collateral—should not by itself dictate a finding that a 
disposition did not conform to commercially reasonable methods.
            
Further supporting the conclusion that the sentence “A sale is 
commercially reasonable if it conforms to reasonable commercial practices among 
dealers in the type of property that was the subject of the sale” defines 
“commercially reasonable” as opposed to merely offering the jury an alternative 
method to make its findings is the fact that the structure of the sentence is 
consistent with that of other definitions throughout the charge. The charge 
contained a separate “Definitions” section and also included definitions in 
connection with individual jury questions, although they were not always labeled 
as definitions. Several examples illustrate the point. In the “Definitions” 
section, “apparent authority” was among the words and phrases defined. The 
definition did not contain language such as “When the term ‘apparent authority’ 
is used, it means . . .” or “‘Apparent authority’ is defined as . . .” but it 
nevertheless clearly was a definition both because of its being in the 
“Definitions” section and because it substantively would be understood by a lay 
jury as defining the term:
 
Apparent authority exists if a party (1) knowingly 
permits another to hold himself out as having authority or, (2) through lack of 
ordinary care, bestows on another such indications of authority that lead a 
reasonably prudent person to rely on the apparent existence of authority to his 
detriment. Only the acts of the party sought to be charged with responsibility 
for the conduct of another may be considered in determining whether apparent 
authority exists.
 
See Black’s Law Dictionary 455 (8th ed. 
2004); Merriam-Webster’s Collegiate 
Dictionary 327 (11th ed. 2003).
            
Next, Question 1 inquired whether Regal and Tex Star agreed Tex Star 
would maintain a dealer reserve account, and the jury was instructed that it 
could consider “any earlier course of dealing” between Regal and Tex Star. The 
immediately following instruction set out the essential legal nature of the term 
“course of dealing” and could only be construed as a definition even though it 
was not identified as such:
 
A course of dealing is a sequence of conduct concerning 
previous transactions between the parties to a particular transaction that is 
fairly to be regarded as establishing a common basis of understanding for 
interpreting their expressions and other conduct.
 
            
And in Question 3 the jury was asked: “Did Regal partly perform?” An 
accompanying instruction did not specify that it was defining “partial 
performance” but it manifestly did so because it set out the meaning of the 
term:
Partial performance occurs when—
a.         
a party takes actions that can only be explained as reliance on an oral 
promise;
b.         
the party acting in reliance on the contract has suffered a substantial 
detriment for which it has no adequate remedy; and
c.         
failure to enforce the oral promise would award an unearned benefit to 
the other party.
            
In Question 9 inquiring whether Tex Star and its principals committed 
fraud, “fraud” was defined by an instruction that was not specifically 
identified as a definition:
Fraud occurs when—
a.         
a party makes a material misrepresentation,
b.         
the misrepresentation is made with knowledge of its falsity or made 
recklessly without any knowledge of the truth and as a positive 
assertion,
c.         
the misrepresentation is made with the intention that it should be acted 
on by the other party, and
d.         
the other party justifiably relies on the misrepresentation and thereby 
suffers injury.
            
The foregoing demonstrate that within the charge 
there were three structural concepts relevant to the issues on this appeal. 
First, whether a jury instruction was a definition depended on the instruction’s 
context and substance rather than on whether the instruction was labeled as a 
definition. Second, definitions in the charge typically did not include language 
limiting the meaning of the word or term defined to the enumerated elements and 
no other elements. Third, the trial court’s general instruction that the jury 
was bound to accept and apply the definitions given in the charge required the 
jury to make its findings according to the substance and essential elements set 
out by the definitions in the charge even though the large majority of 
instructions that defined terms did not limit the definitions to the words used 
in defining the terms by including language such as “only if” or “if but only 
if.”
            
Citing Texas Business and Commerce Code section 9.627(b)(1)-(3) and 
comment 3, the Court says “Article Nine provides several examples of 
commercially reasonable dispositions, commonly referred to as safe harbors,” 
then lists three examples from the statute. ___ S.W.3d 
___. The Court further notes that “a comment to Article Nine explains 
that these safe harbors are not the exclusive means of proving commercial 
reasonableness.” ___ S.W.3d ___ The Court also lists ten factors, noting 
“[a]lthough commercial reasonableness is not precisely 
defined in Article Nine, courts have considered a 
number of non-exclusive factors when addressing the term.” ___ 
S.W.3d ___. The Court recites evidence of several different methods that 
Regal used to sell the vehicles, such as soliciting bids from wholesalers, 
private sales to a small number of trusted wholesalers, and auction, and 
concludes that Regal’s evidence on the method and 
manner of its sales, together with the loan files and their contents, creates 
more than a suspicion or surmise that at least a portion of Regal’s sales were commercially reasonable. The problem is, 
the jury did not have (1) the benefit of the Court’s knowledge of the UCC; (2) 
access to the appellate opinions the Court cites; or (3) knowledge of the 
various factors the Court says could be considered when the jury was determining 
whether Regal’s sales were commercially reasonable, 
because the information was not included in the charge and there was no evidence 
such as expert testimony that those factors should be considered and if so, how. 
Even if some of the jurors had the benefit of the Court’s knowledge of the UCC 
and the appellate opinions the Court cites, unless the charge instructed the 
jury that such law or particular aspects of it was applicable or the law was 
injected into the trial through evidence, the jury could not use it in making 
its decisions. That is because the jury was bound and limited by the charge 
language and, in matters beyond the common knowledge and understanding of lay 
jurors, by the charge and evidence admitted at trial, such as testimony from 
experts. See, e.g., Mack Trucks v. Tamez, 206 S.W.3d 572, 583 (Tex. 2006); FFE Transp. 
Servs. v. Fulgham, 154 S.W.3d 84, 89 (Tex. 2004).
            
The three paragraphs of instructions and definitions in (a), when read as 
a lay jury would read them, seamlessly and in a logical manner told the jury 
what evidence was required for Regal to have proven its damages. Paragraph two 
of (a) begins by instructing the jury to consider only loans relating to 
vehicles Regal sold (1) in good faith and (2) in a commercially reasonable 
manner. That paragraph, by the next sentence, defines “good faith” as “honesty 
in fact and the observance of reasonable commercial standards of fair dealing.” 
The next paragraph then defines “commercially reasonable manner” by telling the 
jury that in order for a disposition to be in a commercially reasonable manner, 
every aspect of the disposition must be commercially reasonable. The following 
sentence defines “commercially reasonable”: “A sale is commercially reasonable 
if it conforms to reasonable commercial practices among dealers in the same type 
of property that was the subject of the sale.” But nowhere did the charge tell 
the jury what factors or elements would be considered reasonable among dealers 
in repossessed automobiles or otherwise constitute commercial reasonableness. 
Because the trial court did not tell the jury what those factors or elements 
were, the only way the lay jury would have known what they were would have been 
from evidence such as testimony by someone with expertise in the subject. 
Without being instructed as to factors or elements of a commercially reasonable 
sale or having expert evidence of them, the jury could only speculate as to what 
the factors were and how to tell if the evidence met legal 
requirements.
            
The Court says that by the court of appeals’ reading of the second 
sentence of the second paragraph—“A sale is commercially reasonable if it 
conforms to reasonable commercial practices among dealers in the type of 
property that was the subject of the sale”—the court of appeals converted one of 
UCC Article 9’s safe harbor provisions into a mandatory condition of proof. The 
Court reasons that “if” cannot mean “only if” because then the first sentence of 
the second paragraph and the third paragraph of (a) would be superfluous. 
Respectfully, I disagree with the Court’s reasoning. First, reading the “if” to 
be “only if” merely reinforces the fact that the sentence is a definition. 
Second, reading “if” in such manner simply does not make the first sentence of 
the second paragraph and the third paragraph of (a) superfluous. Rather, as is 
noted above, such a reading makes the instruction and definitions under (a) a 
clear, understandable, and logical set of instructions by which the jury could 
measure the evidence. Third, if there was an erroneous conversion of a safe 
harbor provision into a mandatory condition of proof, it was done by the trial 
court in its charge, in a question on which Regal had the burden of proof, and 
without objection from Regal. Regal, however, maintains in this Court that the 
instructions under (a) are legally correct.
            
The real difficulty here is that Regal did not have a qualified expert 
witness testify as to what were reasonable commercial practices among dealers in 
the same type of property that Regal was liquidating, or that Regal’s actions conformed to such practices. The jury and 
the parties were bound by the charge. This Court should be also.
            
Contrary to the Court’s characterization of the court of appeals’ 
opinion, the court of appeals adhered to the record before it, the jury charge 
as given, and well-established principles in reaching its result. The court of 
appeals’ analysis that the third paragraph defines “commercially reasonable” 
fits with the surrounding instructions in (a) and is 
logical:
 
[T]he charge submitted in this case states that a sale 
is commercially reasonable if it conforms to the dealer standard. The plain 
meaning of this language does not suggest that the dealer standard is either a 
safe harbor or an otherwise optional standard, or that any other factors may 
even be considered, let alone balanced, but instead that a sale is commercially 
reasonable if (and thus, only if) the dealer standard is met. Regal’s contention would thus not only render the 
definition submitted in the charge meaningless, it would authorize a 
reviewing court to measure the sufficiency of evidence against a different 
standard than was submitted to the jury . . . .
 
246 S.W.3d at 750-51 (emphasis 
added).
            
In sum, under this record I would hold that the instruction that a 
commercially reasonable disposition was one that conformed to reasonable 
commercial practices among dealers in the type of property involved in the sale 
was a definition. The jury was bound to use that definition. Because there was 
no evidence that Regal’s sales were commercially 
reasonable as defined by the charge, I would affirm the court of appeals’ 
judgment on that issue.
II. Evidence to 
Prove Another Standard for Commercial 
Reasonableness
            
Even if the Court is correct and the charge did not define “commercially 
reasonable” sales but only provided an alternative way in which they could be 
proven, then evidence such as testimony from an expert would have been necessary 
for the jury to know if Regal’s sales were 
commercially reasonable.[2] That is because, as previously noted, the 
issue involves matters beyond jurors’ common understanding and there is no other 
standard expressed in the charge. See Mack Trucks, 206 
S.W.3d at 583; Fulgham, 154 S.W.3d at 89; 
Turbines, Inc. v. Dardis, 1 S.W.3d 726, 738 
(Tex. App.—Amarillo 1999, pet. denied). Because the jury was allowed to 
determine Regal’s sales were commercially reasonable 
in the absence of evidence from which it could properly tell whether “Every 
aspect of [each] disposition, including the method, manner, time, place and 
other terms” conformed to reasonable commercial practices among dealers in 
repossessed vehicles, and in the further absence of evidence establishing either 
another standard for commercially reasonable sales or from which it could 
properly tell how to determine if Regal’s sales were 
commercially reasonable, then the jury’s finding can only have been based on 
some unknown standard at which it arrived by speculation.
            
The evidence showed how James Wright disposed of the automobiles for 
Regal, that Wright had used those sales methods for many years, that he had previously sold a great number of vehicles 
using some or all of the methods, and that some of the general methods he used, 
such as auction or private sale, were acceptable to other witnesses. But more 
was required. There must have been evidence that Wright’s general methods were 
commercially reasonable and also that “[e]very aspect 
of [each] disposition, including the method, manner, time, place and other 
terms” was commercially reasonable. There was no way for the jury to know if his 
methods and every aspect of them were commercially reasonable because it was not 
given standards by which it could tell if they were. Accordingly, I would hold 
that the evidence is legally insufficient to support a finding that Regal’s sales were commercially reasonable, even apart from 
the lack of evidence to support a finding that Regal’s 
sales were commercially reasonable under the definition in the 
charge.
III. 
Conclusion
            
I would affirm the judgment of the court of appeals as to damages Regal 
claims based on the jury’s answers to Questions 6(a) and 6(b) and consider the 
remainder of the issues presented by the parties.
 
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
OPINION DELIVERED: August 20, 2010






[1] For 
example, Tex Star submitted a proposed instruction setting out numerous factors 
the jury could consider in determining if Regal’s 
disposition methods were commercially reasonable. The proposed instruction 
included language allowing reasonable commercial practices among dealers in the 
type of property that was the subject of the sale to be considered as a factor. 
The trial court refused the instruction.

[2] I agree 
with the court of appeals that sales might be proven commercially reasonable 
under some combinations of facts and jury charge language absent expert witness 
testimony. 246 S.W.3d at 752 n.9. Such a combination of 
facts and charge language is not present 
here.